XAVIER VAN DE CASTEELE, Appellant, v. WILLIAM A. CORNWALL, and HIRAM PEARSON and GEO. SIMPTON, his Sureties, Respondents.

An instrument not under seal, is not the character of security which is required by the statute to be given by Notaries Public.

If such an instrument be consid red as a good contract at common law, yet, as it is payable to the State, and not assigned to the plaintiff, the latter has no right of action in his own name.

APPEAL from the District Court of the Twelfth Judicial District, San Francisco County.

This was an action brought upon the official bond of the defendant, Cornwall, who was a Notary Public in San Francisco.

The complaint sets out the bond, which was conditioned for the legal performance of the duties of Cornwall, as Notary, and was made payable to the State of California.

The bond, or instrument, was approved by the County Judge, and filed in the office of the County Clerk, and upon the back of the bond, the Judge had endorsed his certificate, that the defendant, Cornwall, had taken the oath of office of a Notary Public.

The complaint alleges the breach of the bond, and states the facts of such breach, and claims damages to the amount of $5,000.

The bond was duly signed by all of the defendants, but no seals were attached to the instrument, or set opposite to their names.

The provisions of the statute relative to official bonds, will be found in the argument of appellant.

Pearson demurred to the complaint, on the ground that the bond was unsealed. The Court sustained the demurrer, and plaintiff appealed.

*Hall McAllister* and *Francis Ganahl*, for Appellant.

The only question raised for the consideration of this Court, is whether the bond of a Notary Public is a valid instrument, so as to bind the parties thereto without being sealed.

1. Is the instrument a valid obligation within the meaning of the statute ?

2. If the instrument is not a valid obligation within the meaning of the statute, is it an instrument good and binding at common law ?

The statute says: " Each Notary Public, before entering upon the duties of his office, shall take the oath of office, which shall be endorsed on his commission, and shall enter into bond to the State in the sum of five thousand dollars, with sureties to be approved by the County Judge of the county for which such Notary may be appointed. The bond, together with a certificate of the oath, shall be filed and recorded in the office of the County Clerk of such county." Compiled Laws, 902.

Again, in the Act concerning Official Bonds: " Every official bond executed by any officer, pursuant to law, shall be in force, and obligatory upon the principal and sureties therein, to and for the State of California, and to and for the use and benefft of all persons who may be injured or aggrieved by the wrongful act or default of such officer in his official capacity. And any person so injured or aggrieved, may bring suit on such bond in his own name, without any assignments thereof." Compiled Laws, 98.

By this last section above quoted, the plaintiff is expressly empowered to bring action on the official bond of Cornwall, in his own name.

The bond is a joint and several one, and either a joint or several action may be had upon it. The sureties cannot object that a judgment was not first obtained in a separate action against their principal. Governor v. Perkins, 2 Bibb, 395.

The action being properly instituted, does the complaint state a cause of action ?

Does the want of seals invalidate the instrument declared upon, and is such an instrument valid in the words of the statute ?

The words of the Act are: " Each Notary shall take the oath and enter into bond to the State, in the sum of $5,000, with sureties to be approved by the County Judge."

The words are not, " shall enter into or give a bond," but are simply, " shall enter into bond to the State."

Words are to be taken in usual and received significations. The

words " enter into bond to the State," mean simply to become bound to the State. It does not specify the peculiar nature of the security to be given. To enter into bond, does not imply that a bond, in its technical sense, should be given.

The object of the statute was, that the State should have security for the faithful discharge of all the duties of the Notary.

What was the nature of that security, the statute does not specify. It specifies the amount, in which the Notary shall become bound; and further, it says that he shall become bound with sureties to be approved by the County Judge. It does not specify the number or quality of these sureties—whether freeholders or not;—only one thing is specified in this security of the Notary, and that is the amount. All the rest,— the nature of the security, the number of the sureties, etc.,—is left to the Judge of the County. His approval is to be endorsed, and the security is to be filed and recorded.

The approval of the County Judge satisfies the statute.

Again, the policy of the statute was security. The best security, then,—that is, the highest kind of security of which the State can become possessed, to the amount of $5,000,—will but support this, and carry out the policy of the statute and the intent of the Legislature.

Now, we hold that a bond is not the highest kind of security known to the law: a recognizance is a debt of record, and is higher than a mere bond.

There is no statute in the State upon recognizance, except in criminal cases, and the security in question is tantamount to, if not in effect, a recognizance at common law. 2 Black. Com., 241.

Hence, a bond given to the Governor of the State of Georgia, by a person introducing slaves into the State,—the statutes of Georgia making the unlawful introduction of slaves into the State, punishable by suit or indictment, conditioned to show that the introduction was legal, is a recognizance, and may be proceeded on as such by *scire facias.* T. M. P. Charlton's Rep., 306.

Now a seal is not necessary to a recognizance. 4 Ala., 827. 2 Rep. Constitutional Court, 123. And the reasoning in the case above will apply to the security at bar.

But again: If the instrument declared on does not amount to a

Commercial Law Recognizance, we affirm that the approval of the County Judge, the filing and recording, impart greater evidence of that due and deliberate act of the mind, embraced within the original meaning of the word " consideration," than a mere useless piece of wax or paper.    1 Parsons on Contracts, 354.

The technical rule,—that a consideration is not necessary to a sealed instrument, the seal alone implying a consideration, and this instrument, being without seal, no action will lie, because *ex vi termini*, there is no consideration,—is answered by as technical a one: that this filing, approval, and recording of the instrument furnish greater evidence of a consideration, than a seal.

2. But granting that the words " enter into bond," mean, " shall give a bond," we affirm that the instrument in question is a valid contract at common law, and is binding upon the defendants.

A bond *ex vi termini*, imparts a seal, and the instrument in question, being without a seal, is not a bond.

It is not necessary to discuss how far equity might redress, if the omission of putting the seals to the instrument was the result of accident.    The authorities are clear upon that point. 1 Story Equity, 165. Montrills *v.* Hughton, 7 Conn., 545.    5 Johns. C. R., 224.

But granting that the words, " to enter into bond to the State," mean, " shall give a bond to the State," and, also, that the instrument declared on is a valid contract between the parties thereto, and binds the defendants, yet it may be contended that it is against the policy of the statute, and consequently void.

We say again, that the policy of the law in requiring the "bond" of Notaries, was security, to the State and to the person damaged, against that neglect.

If a bond be the only instrument which the policy allows, a higher security than a bond, as a recognizance, a mortgage, depositing $5,000, would be as much against the policy of the law, as one of an inferior nature to a bond.

Security for the performance of certain duties was the policy—the highest kind of security was preferred.    But to say that the neglect of an officer in point of form to take that, an acceptance in lieu thereof, of an inferior species of security, is less consistent with that policy

than an abandonment of all security,—is an inference which just reasoning can never sanction.

In Bradley v. The United States, the Court held that a designation of a particular form of bond, in an Act of Congress, makes every other form void,—is not warranted by any principle of public policy, which the law was designed to promote. 10 Peters, 359.

There is a list of cases, which will doubtless be cited by the other side, to sustain this position—that a bond is alone within the policy of the law.

But the instruments there declared, are defective in some substantial quality,—varying under various statutes, and working great harm to the parties thereto. But in the instrument in question, every substantial statutory requisite has been complied with. It is joint and several, conditioned for Cornwall's faithful discharge of his duties, made payable to the State of California in the sum of $5,000. Comp. L. 98. All has been done here, except the putting of the seals to the instrument.

How then can an argument, which asserts that it is a void instrument, be sustained by cases which so essentially differ in so many particulars. United States v. Lein et al., 15 Peters, 315.

But again: the instrument being within the policy of the law, it is a valid contract at common law, and binding upon the defendants.

This is a contract of guaranty. It is a promise of one person to answer for another person, in consideration of the latter obtaining some trust, confidence, or credit.

It is in this instance, a contract on the part of Pearson, Simpton and Cornwall, with the State, in which they promise to answer to the extent of $5,000 for Cornwall, in consideration of his being allowed by the State, to hold the trust and enjoy the profits of his being a Notary Public.

To make the instrument which is the evidence of this contract, binding,—binding upon the defendants,—it is necessary that it should be executed in writing, and show a consideration. It is executed in writing. Does it show a sufficient legal consideration?

What is a sufficient consideration?

It is laid down in Burrow, that "any damage, or suspension of a

right, or possibility of a loss occasioned to the plaintiff by the promise of another, is sufficient consideration for such promises, and will make it binding, although no actual benefit accrues to the party promising." 3 Burrow, 1669. 3 Bing., 107. 6 Bing., 34. 4 Car. & P., 59. 17 Mass., 140. 3 Conn., 291.

The instrument recites, that Cornwall had received from the State, the office of Notary, and is to perform faithfully the duties of such office, and should he fail to do so, which must necessarily cause a damage to the State, and a possibility of loss, then the defendants will indemnify the State.

" To constitute a consideration, it is not absolutely necessary that a benefit should accrue to the party promising; it is sufficient if something valuable flow from the person to whom the promise is made." Violett v. Potters, 5 Cranch., 142.

So again, in 2 Peters, 182: " It is of no consequence that the direct consideration moves to a third person. Damage to the promisee, constitutes as good a consideration as benefit to the promisor."

But here there is a direct benefit to the party promising. The contract is but a simple and entire contract, to which on the one hand the State constitutes one party, and Cornwall and the promisors, Pearson and Simpton, constitute the other. To the one party, there is as full a benefit promised on the one side, as there is a service rendered on the other.

The office of Notary, with its trusts, emoluments, and responsibilities, had passed to, and was enjoyed by, one of those joint parties.

But it may be argued that the consideration was put at the date of the contract, and consequently, being executed, could sustain no promise. The appointment to the office had been passed and made; but the trusts of the office continued, and its emoluments are to be received.

In Linn v. United States, the bond of a Receiver, without seals, was held binding upon his sureties and valid as a contract at common law. Vide 15 Peters, 290.

But we deny that the words of the statute, "shall enter into bond to the State," mean "shall give a bond." But even admitting it, we see that the above case, and the principle advanced, show clearly that the instrument is valid and binding as at common law.

The defendant may argue, that if the instrument is only a contract at common law, that then this plaintiff is not entitled to bring this action, (under the statute on official bonds, Comp. Laws, 98,) in his own name, without an assignment from the State; because that statute mentions specially the word " bonds." If the instrument is binding upon the sureties within the policy of the one act, surely the right to sue, where the State has that right, must be in the policy of the other.

But again: the appointment of Cornwall was valid, before the giving of the security required. The giving of that security was a ministerial act therefor, and neither himself nor his sureties can take advantage of his own neglect and wrong. Musselman *v.* Commonwealth, 7 Barr., 249. Skillingh *v.* Zander, 12 Wend., 306.

But again: the statute says—" If any person elected or appointed to any office, shall perform any of the duties thereof, without having executed and filed in the proper office, any bond required of him by law, shall be deemed guilty of a misdemeanor, and on conviction thereof, shall be fined in a sum not exceeding one thousand dollars." Comp. Laws, 97.

The effect of the instrument in question being declared void, will bring the principal of the obligation within the Act. The books are full of cases on the subject of official bonds. The Courts have strenuously endeavored, with greater or less success, to enforce them. The Legislature, guided by the light of the numerous and marked cases, have wisely steered clear of the dangers of loose legislation upon a subject so important to the public weal, and have provided in Section 11, *et seq.*, in the Act concerning official bonds, (Comp. Laws, 79,) that "defect in substance, etc., in official bonds, shall discharge sureties, etc."

We think that the case at bar is fully within the spirit, if not the letter of the sections.

*Haights & Gary,* for Respondents.

1. The instrument sued on, being without a seal, is not a bond, within the statute. U. S. *v.* Linn *et al.,* 15 Peters, 290. Comp. L., p. 903, §§ 2, 3 and 11. Bouvier's Law Dic., Vol. 1, Tit. Bond, § 4, also, § 17, cases cited.

2. If the instrument is not a bond within the statute, the present plaintiff has no right of action. If any right of action exists at common law, independent of the "Act concerning Notaries Public," it exists in favor of the people of the State alone, for damages sustained by them only. See Comp. L., p. 303, § 11.

3. There is no provision in any statute of this State, giving to third persons a right of action against sureties on notarial bonds. The only parties entitled to seek a remedy against the surety, are the obligees, or their assigns. The principal alone is responsible to third persons. See Comp. L., p. 903, § 11.

HEYDENFELDT, J., delivered the opinion of the Court. MURRAY, C. J., concurred.

The instrument upon which suit is brought, is not under seal, and is therefore not the character of security which is required by the statute to be given by Notaries Public.

If it be considered as a good contract at common law, yet as it is payable to the State, and not assigned to the plaintiff, the latter has no right of action in his own name.

Judgment affirmed.